IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRITTNEY WALKER and DUSHANNA JONES, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREENS SPECIALTY PHARMACY, LLC, d/b/a AllianceRX Walgreens Prime, LLC<br><br>Defendant. | Case No. 1:21-cv-05780<br><br>Hon. Judge Lindsay C. Jenkins<br><br>**UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** |

Representative Plaintiffs, Brittney Walker and Dushanna Boose (f/k/a Dushanna Jones), respectfully move this Honorable Court to approve the proposed settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release (hereinafter "Settlement" or "Agreement") attached as Exhibit A. They request that the Court enter an Order, substantially as proposed in Exhibit B, approving the Settlement as fair and reasonable. Without admitting any liability, and for settlement purposes only, Defendant consents to the relief requested in the forgoing Motion and as set forth in Exhibit B, and such relief is appropriate for the reasons that follow.

**I.  INTRODUCTION**

The Parties seek approval of the proposed Fair Labor Standards Act ("FLSA") Settlement reached between them and memorialized in the Agreement attached as Exhibit A. The proposed Settlement will resolve *bona fide* disputes involving unpaid wage claims under the FLSA. Because the proposed Settlement is an FLSA settlement for employees who affirmatively elect to participate, as opposed to a Rule 23 opt-out settlement that would bind absent class members, **no fairness hearing is required or requested by the Parties**.[1] The Parties respectfully submit that the proposed

---

[1] To the extent the Court prefers a hearing, the Parties respectively request a virtual or telephonic hearing to minimize costs.

Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The following sections explain the nature of the lawsuit, the negotiations, the Settlement's principal terms, and the propriety of approving the Settlement.

## II.     BACKGROUND

### A.     Summary of Case

This action was brought as a "collective" action as a result of Defendant's alleged practices and policies of not paying Plaintiffs and other customer service representatives wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219.[2] Plaintiffs alleged that Defendant had a practice and policy of paying its customer service representatives only for work performed while completely logged into its call programs, and did not pay them for time spent, before clocking in each day, starting and logging into Defendant's computer system, software applications, and phone system, or time spent, after their shift ended each day, shutting down and logging out of Defendant's phone system, software applications, and computer systems. (*See* ECF 1, 28, 67.)

Defendant denies the Plaintiffs' allegations in their entirety, denies liability, denies that Plaintiffs suffered any damages, and asserts, *inter alia*, that the alleged unpaid work was not compensable, and any time spent performing such work was *de minimis* as a matter of law. (ECF 79; Ex. A at ¶ 17.)

After this action was filed, the Parties engaged in extensive briefing on various preliminary motions.[3] On February 14, 2024, the Court held an evidentiary hearing on the issue of general personal

---

[2] The operative Complaint (ECF 67) also asserts claims against Defendant for violation of Ohio and Illinois State law on behalf of a putative Ohio Rule 23 class and putative Illinois Rule 23 classes, but Plaintiffs did not move to certify the Rule 23 classes. Instead, the Parties have agreed to settle this matter on an FLSA basis.
[3] Including: *Defendant's Motion to Compel Arbitration/Dismiss Pursuant to Federal Arbitration Act and to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6)*; *Defendant's Limited Motion for Clarification and/or*

2

jurisdiction. Following the evidentiary hearing, the Parties agreed to file a Motion to Stay all proceedings and deadlines in this matter (which the Court granted) and explore possible settlement on behalf of the Plaintiffs and all others similarly situated former and current customer service representatives and related call center roles employed by Defendant in Illinois between April 22, 2019 and the present ("Eligible Settlement Participants"). In addition to the 2 Representative Plaintiffs and 8 Opt-In Plaintiffs, there are 302 Eligible Settlement Participants (based on the number of unique Employee IDs) in Appendix 1 of the Agreement.

### B. Investigation, Informal Discovery, and Negotiation of the Settlement

The Parties engaged in substantial investigation and motion practice prior to negotiating the Settlement. (*See* Ex. A at ¶¶ 19, 22; Ex. C at ¶¶ 15-17, 23-24.) Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth factually specific Complaints for the Court and Defendant. (Ex. C at ¶ 30.) Plaintiffs' Counsel also engaged in further independent investigation of the facts and interviewed and obtained declarations from several Plaintiffs. (*Id.*) Plaintiffs' Counsel also engaged in a significant amount of research and investigation in connection with the extensive briefing of motions in this case. (*Id.*)

The Parties also engaged in substantial informal discovery prior to negotiating the settlement, including a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims. (Ex. C at ¶ 32.) This included the production of employment information, including time and pay records, for Representative Plaintiffs, Opt-In Plaintiffs, and all of the Eligible Settlement Participants. (*Id.*) Using the data provided by Defendant, Plaintiffs' Counsel prepared a detailed analysis of the Representative Plaintiffs', Opt-In Plaintiffs, and Eligible Settlement Participants' wage damages. (*Id.*)

---

*Reconsideration*; *Defendant's Motion to Dismiss the Nationwide FLSA Collective in Plaintiffs' Second Amended Complaint for Lack of General Personal Jurisdiction over Defendant Pursuant to Federal Rule Of Civil Procedure 12(B)(2)*; and *Plaintiffs' Motion for Equitable Tolling*.

3

The Parties also engaged in several lengthy discussions and correspondence concerning their respective legal and factual positions, and the alleged wages damages. (*Id.* at ¶ 32.) This included several discussions and communications between counsel for the Parties, as well as discussions and communications with the mediator. (*Id.*) All aspects of the dispute are well-understood, and the legal issues in this case were vehemently argued by both sides. (*Id. at* ¶ 33.)

On October 8, 2024, the Parties participated in a day-long mediation session facilitated by Frank A. Ray, Esq. of Frank A. Ray Co., L.P.A., a reputable mediator with extensive experience mediating class and collective actions, after which they reached an agreement to settle the Action on the terms set forth in the Agreement attached as Exhibit A. (Ex. A at ¶ 20; Ex. C at ¶ 27.)

**C.     The Settlement Terms**

The Total Maximum Settlement Amount is $460,000.00, which will cover: (a) all of the Individual Payments to Eligible Settlement Participants; (b) Representative Plaintiffs' Service Award Payments; (c) Plaintiffs' Counsel's Attorneys' Fees and Expenses; and (d) Settlement Administration costs. (Ex. A at ¶ 27.) Pursuant to the Agreement, the Total Maximum Settlement Amount will be allocated as follows:

➢ $285,153.97 of the Total Maximum Settlement Amount will be divided into Individual Payments to the Plaintiffs and Eligible Settlement Participants. (*Id.* at ¶ 28.) In exchange, Plaintiffs and the Eligible Settlement Participants who elect to participate in the settlement will release the Released Parties from all federal and state wage-and-hour claims asserted in this case for the Release Period. (*Id.* at ¶ 36.) The Individual Payments are provided in Appendix 1 of the Settlement. The Individual Payments were calculated by Plaintiffs' Counsel and are based proportionally on each individual alleged overtime damages during the Calculation Period and assuming the three (3) year statute of limitations applies. (*Id.* at ¶ 29, 30.) Moreover, any individuals who are owed less than $25.00 will receive a minimum payment of $25.00. (*Id.* at ¶ 29.)

4

> ➢ $153,333.33 (one-third) of the Total Maximum Settlement Amount, will be paid to Plaintiffs' Counsel for attorneys' fees, and $5,312.70 for expenses incurred. (*Id.* at ¶ 33.)

> ➢ $10,000.00 will be paid to Representative Plaintiffs ($5,000 to Plaintiff Walker and $5,000 to Plaintiff Boose), in additional to their Individual Payments, for their services as Representative Plaintiffs in this action and in exchange for a general release. (*Id.* at ¶ 32.)

> ➢ $6,200.00 of the Total Maximum Settlement Amount will be paid to the Settlement Administrator for its costs and services in administering the settlement (*Id.* at ¶ 34).

In addition to the Total Maximum Settlement Amount, Defendant will separately pay its share of all payroll taxes owed on the W-2 portion of the Individual payments. (*Id.* at ¶ 35.) Specifically, Defendant will wire an additional sum of $25,000 ("Payroll Tax Fund"), which shall be for the express purpose of funding any employer-side payroll taxes due on wage portion of the aforementioned Individual Payments. The Settlement Administrator shall satisfy the payment of all employer tax obligations from the Payroll Tax Fund. (*Id.*)

## III. THE SETTLEMENT SHOULD BE APPROVED

The Parties seek approval of their proposed Agreement to settle this action pursuant to Section 216(b) of the FLSA. "Stipulated agreements in a FLSA case must be approved by the Court." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-CV-01937, 2022 WL 16706898, *1 (N.D. Ill. Nov. 4, 2022). Because the proposed Settlement is an FLSA settlement—as opposed to a Rule 23 opt-out settlement that would bind absent class members—no fairness hearing is requested by the Parties, nor is the Court required to hold one. Instead, **"[a] one-step settlement approval process is appropriate" in FLSA settlements**. *See Koszyk v. Country Fin. a/k/a CC Servs., Inc.,* No. 16 Civ. 3571, 2016 WL 5109196, *1 (N.D. Ill. Sept. 16, 2016); *Winking*, 2022 WL 16706898, *1 ("There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement

5

unless they decide to participate in it."); *Prena v. BMO Fin. Corp.*, No. 14-09175, 2015 WL 2344949, *1 (N.D. Ill. May 15, 2015); *Briggs v. PNC Fin. Servs. Grp., Inc*, No. 1:15-cv-10447, 2016 WL 7018566, *2 (N.D. Ill. Nov. 29, 2016). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016). Courts in the Northern District of Illinois have routinely approved such "one-step" FLSA settlements. *See, e.g.*, *Bainter v. Akram Invests, LLC*, 2018 WL 4943884 (N.D. Ill. 2018); *Furman v. At Home Stores, LLC*, 2017 WL 1730995 (N.D. Ill. 2017); *Briggs*, 2016 WL 7018566, *1 (, citing *Koszyk*, 2016 WL 5109196, *1 ; *Castillo*, 2016 WL 7451626, *1 ; *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, *1.

>    A.   **The Settlement is a fair and reasonable resolution of a *bona fide* dispute.**

"It is a well settled principle that the law generally encourages settlements." *Koszyk*, 2016 WL 5109196, *1 (quoting *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Koszyk,* 2016 WL 5109196, *1 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Andrus v. DenOne, LLC*, 2019 WL 13195500, *1 (N.D. Ohio 2019).

Here, a *bona fide* dispute certainly exists. In fact, there are several issues in material dispute—the outcome of which remains uncertain—that could significantly impact this case if it were further litigated. (Ex. A at ¶ 18; Ex. C at ¶ 34.) The Parties dispute, *inter alia*, whether Defendant violated any wage and hour law; whether the alleged unpaid work performed by Plaintiffs was compensable such that Plaintiffs are entitled to overtime; the amount of time Plaintiffs spent performing the alleged unpaid work and whether it was *de minimis*; and whether this case is appropriate for collective treatment. (*Id.*) Moreover, while Defendant contends that Plaintiffs could not succeed on the merits,

6

even if they could, the Parties also dispute whether Defendant has a good faith defense that would preclude an award of liquidated damages, and whether Defendant's conduct was willful, and thus, whether the 2-year or 3-year statute of limitations applies. (*Id.*)

Moreover, all other relevant factors favor approval.

First, the complexity, expense, and likely duration of continued litigation favors approval. "Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, 1:11-cv-88, 2014 WL 3447947, *7 (S.D. Ohio July 11, 2014) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013)). This case is certainly no exception. As discussed above, several factual and legal issues are in dispute in this case, and if forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted litigation. (Ex. C at ¶ 51.) The Parties would be required to engage in extensive formal discovery, which would be expensive and time-consuming given the continued factual and legal disputes between the Parties. (*Id.*) The Parties would also be required to engage in extensive briefing on conditional certification, decertification, and dispositive motions. (*Id.*) Moreover, if this case ultimately went to trial, the trial would be complex and factually intensive with respect to both liability and damages, and any final judgment would likely be appealed. (*Id.*)

Second, the stage of proceedings favors approval, as the settlement resulted from informed negotiations between experienced counsel who fully appreciated the merits and risks of this case. (*See* Ex. C at ¶ 28, 33-36, 56.) Prior to negotiating the settlement, the Parties engaged in substantial investigation and informal discovery. (*Id.* at ¶¶ 30-33.) This included a comprehensive exchange of information, including all the necessary time/pay records for Plaintiffs and the Eligible Settlement Participants, which Plaintiffs' counsel fully analyzed and used to prepare calculations and an in-depth analysis of Plaintiffs' damages. (*Id.* at ¶ 30.) While the Parties reached the Settlement before commencing formal discovery, "[b]y avoiding formal discovery, resources that otherwise would have

7

been consumed by the litigation were made available for settlement, and the risk and uncertainties for both parties were reduced." *Duprey v. Scotts Co.*, 30 F.Supp.3d 404, 408 (D. Md. 2014). Moreover, the legal issues in the case were thoroughly researched and argued by competent counsel with extensive experience litigating wage and hour collective actions. (*See* Ex. C.) The parties' counsel engaged in extensive arms-length settlement negotiations and reached the settlement with the assistance of an experienced mediator. (*Id.* at ¶¶ 27-28.) *See, e.g.*, *Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties."); *Mollett v. Kohl's Corp.*, No. 21-cv-707-pp, 2022 WL 4641082, *2 (E.D. Wis. Sept. 30, 2022).

Third, the risks of establishing liability favors approval. Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that further litigation is uncertain in terms of duration, cost, and result. (*Id.* at ¶¶ 35-36, 54.) Continued litigation would be risky for all and at each stage, including conditional certification, decertification, summary judgment, and trial. (*Id.* at ¶ 35.) If a jury or the Court were to find that the alleged unpaid time was *de minimis* or otherwise not compensable, Plaintiffs and the Eligible Settlement Participants would be entitled to no recovery for alleged unpaid overtime. (*Id.* at ¶ 45.)

Fourth, the risk of establishing damages favors approval. (*See Id.* at ¶ 45.) Again, if the Court or jury determined that the alleged unpaid work time was *de minimis* or otherwise not compensable, there would be no recovery for alleged unpaid overtime. (*Id.*) Moreover, even if Plaintiffs were to succeed on the merits, the Court or a jury could find that Defendant did not act willfully, and thus a two-year statute of limitations would apply, which would cause certain individuals to be dismissed (as their damages are not within the two-year statute of limitations), and would lessen the damages of those whose employment includes time within the 3-year statute of limitations. (*Id.*) Further, even if Plaintiff succeeded on the merits and the 3-year statute of limitations applied, the Court or a jury could

8

find that Plaintiffs spent less time performing the alleged work than that which was recovered in this Settlement. (*Id.*) In short, all of these scenarios would result in a monetary award of less than the amount obtained through this settlement.

Fifth, the range of reasonableness of the settlement fund in light of the best possible recovery and all the risks of litigation favors approval. As noted above, a *bona fide* dispute exists as to whether Defendant has any liability in this case. The outcome of further litigation is uncertain, and the risks of continued litigation are evident for both sides. (*Id.* at ¶ 35.) The Settlement, on the other hand, guarantees the Settlement Class a substantial recovery promptly and efficiently without the attendant risks and delay of continued litigation and appeals. The Total Maximum Settlement Amount equals approximately **127%** of the total overtime wages allegedly owed to Plaintiffs and the Eligible Settlement Participants, and that is assuming they worked an additional 15 minutes each shift and the 3-year (as opposed to 2-year) statute of limitations applies. (*Id.* at ¶ 43.) Moreover, even after deducting the payments for fees and expenses, service awards, costs of administration, the net recovery for Plaintiffs and the Eligible Settlement Participants equals approximately 78.71% of their alleged unpaid overtime (78.65% after also deducting the $25.00 minimum payments), and again, that is assuming that they worked an additional 15 minutes each shift, that such additional time was compensable, and the 3-year statute of limitations applies, all of which Defendant disputes. (*Id.* at ¶ 44.)

Additionally, all components of the proposed distribution are proper and reasonable. The Individual Payments (provided in Appendix 1 of the Settlement Agreement) were calculated proportionally based on each Plaintiff's and Eligible Settlement Participant's alleged damages during the Calculation Period, with a minimum payment of $25.00 to any individuals who would otherwise recover less than $25.00. (Ex. A at ¶ 29; Ex. C at ¶ 41.) Moreover, the release to which the Settlement Class (other than the Representative Plaintiffs) will be subjected is limited to wage and hour claims. (Ex. A. at ¶ 36). Further, the release will only be binding upon those who affirmatively elect to

9

participate (*Id.* at ¶¶ 5, 36) after receiving the Settlement Notice, which defines the release to which they will be subjected by cashing their check (Id. at Appx. 2), as well as their check containing an endorsement that expressly informs them "By cashing this check, pursuant to 29 U.S.C. 216(b), I agree to join the case *Walker, et al v. Walgreens Specialty Pharmacy, LLC* and I agree to participate in the Settlement and be bound by the release of claims in the Settlement Agreement." (*Id.* at ¶ 39.)

Accordingly, the Settlement is a fair and reasonable resolution of a *bona fide* dispute.

### B. Plaintiffs' Counsel's Attorneys' Fees and Expenses should be approved.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Moreover, "[p]roportionality between fees and damages is not required." *Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 WL 12356838, *1 (E.D. Wis. Nov. 15, 2012)."To hold otherwise would in reality prevent individuals with relatively small claims from effectively enforcing their rights." *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228-29 (7th Cir. 1972).

Attorney's fees may be determined using either the percentage of the fund method or the lodestar method. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). However, "[t]he Seventh Circuit has endorsed the percentage-of-recovery method as the best way to calculate attorneys' fees when a settlement provides that class counsel will be paid from the settlement fund." *Martin v. Lexington Health Care Center of Chicago Ridge, Inc.*, No. 13 C 0832, 2015 WL 14073005, *4 (N.D.

Ill. Mar. 5, 2015) (citing *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). "In deciding fee levels in common fund cases, [the Seventh Circuit has] consistently directed district courts 'to do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). "The Seventh Circuit has instructed district courts to award attorneys' fees that approximate the market rate." *Winking*, 2022 WL 16706898, *3. In this case, Plaintiffs' counsel is seeking a percentage of the total settlement amount for attorneys' fees, and thus, the market rate for the legal services provided by Plaintiff's counsel is a contingency fee. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986). The Seventh Circuit has recognized that "most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis" and that the "typical contingent fee is between 33 and 40 percent." *Gaskill*, 160 F.3d at 362.

Here, the proposed payment of attorneys' fees—which equals only **one-third** of the Total Maximum Settlement Amount—is consistent with the market rate and well within the range of reasonableness. Indeed, "Courts **routinely** hold that **one-third** of a common fund is an appropriate attorneys' fees award in class and collective action settlements, including wage and hour settlements." *Kujat v. Roundy's Supermarkets Inc.*, No. 1:18-cv-05326, 2021 WL 4551198, *4 (N.D. Ill. Aug. 11, 2021) (collecting cases)); *see also Koszyk*, 2016 WL 5109196, *3 (granting request for one-third of settlement fund for attorneys' fees plus costs in FLSA collective action); *Winking*, 2022 WL 16706898 (awarding plaintiff's counsel one-third of $180,000 total settlement fund for attorneys' fees in addition to reimbursement of costs in FLSA collective action settlement); *Briggs*, 2016 WL 7018566, *2-*3 (approving fees to plaintiffs' counsel equal to one-third the total settlement fund in FLSA collective action settlement); *Furman v. At Home Stores LLC*, 2017 WL 1730995 (awarding plaintiff's counsel one-third of $990,000 settlement fund for attorneys' fees in addition to costs); *Sanchez v. Roka Akor Chicago LLC*, No. 14-cv-4645, 2017 WL 1425837, *6 (N.D. Ill. Apr. 20, 2017) (approving attorneys'

11

fees in an amount equal to 39.5% of the common fund).

Moreover, the attorneys' fees requested are certainly reasonable considering the substantial benefit achieved for the Plaintiffs. Again, the Total Maximum Settlement Amount is approximately **127%** of the total overtime wages allegedly owed to Plaintiffs and the Eligible Settlement Participants, and that is assuming Plaintiffs worked an additional 15 minutes each shift (which Defendant disputes), that such additional time was compensable (which Defendant disputes), and the 3-year statute of limitations applies (which Defendant disputes). (Ex. C at ¶ 54.) Thus, the Settlement in this case "greatly exceeds the typical 7-11% recovery in FLSA cases." *Smith v. SAC Wireless, LLC*, 2022 WL 1744785, \*3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, \*8 (N.D. Ohio Mar. 8, 2010) (citing Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. June 1995).

The complexity of this litigation also favors approval of the requested fees. Again, wage-and-hour collective actions are, by their nature, complicated and time-consuming, and "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, \*4 (S.D. Ohio, June 24, 2011). If forced to further litigate, the Parties would be required to engage in extensive formal discovery and briefing regarding motions for conditional certification, summary judgment, and decertification, any trial of this matter would be complex with respect to both liability and damages, and any final judgment may be appealed. (Ex. C at ¶ 44.)

Further, Plaintiffs' Counsel undertook representation under a one-third contingent-fee basis, expended significant time and effort and advanced costs and expenses, without any guarantee of compensation. (*Id.* at ¶ 50.) Thus, the attorneys' fees in this case were entirely contingent upon the success of this litigation and should not be altered because counsel efficiently resolved this case rather

12

than prolonging the litigation and increasing the potential costs. *See* Manual for Complex Litigation (4th) § 14.121 ("one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation."). Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of the success they achieved in reaching the settlement. (*Id.* at ¶ 51.)

Furthermore, the services rendered to the Plaintiffs reflect the substantial experience Plaintiffs' Counsel has with litigating collective and class actions, as explained in the Declaration attached hereto. (*See* Ex. C.) In fact, Plaintiffs' Counsel's one-third fee request has been routinely approved in numerous similar collective and class actions. (*See Id.* at ¶ 56.)

In addition, the litigation expenses sought to be reimbursed are also proper and reasonable. During the course of the litigation of this action, Plaintiffs' Counsel has incurred expenses in the amount of $5,312.70, which includes $402 for the filing fee; $103.60 for service of the Complaint and Summons; $450.00 for pro hac vice admissions fees for 3 attorneys; $575.00 for public records searches; $51 for eSign transmissions and/or letter mailing, $750.97 for travel and lodging in connection with the February 14, 2024 evidentiary hearing; $500.00 for miscellaneous litigation expenses, and $2,480.13 for Plaintiffs' share of the mediator's fee. (*Id.* at ¶ 49.)

Accordingly, the requested payment for attorneys' fees and expenses should be approved.

    **C.**    **The Service Awards to Representative Plaintiffs should be approved.**

Service payments are routinely given to representative plaintiffs in class and collective actions. *See Briggs*, 2016 WL 7018566, *2. Such awards "serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by the plaintiffs." *Id.*; *see also Koszyk*, 2016 WL 5109196, *3.

13

Here, the two Representative Plaintiffs, Brittney Walker and Dushanna Boose, provided substantial and effective services in this case, which has been in litigation for approximately 3 years. (Ex. C at ¶ 47.) Both Representative Plaintiffs, *inter alia*: agreed to bring this action in their name; agreed to participate in discovery and (if necessary) appear for deposition and trial; provided declarations; provided extensive and critical factual information that assisted Plaintiffs' Counsel in formulating the claims in this case; engaged in several and extensive communications with Plaintiffs' Counsel throughout the course of this litigation; agreed to make themselves available during mediation; and provided pertinent information to Plaintiffs' Counsel that helped Plaintiffs' Counsel negotiate the Settlement. (*Id.*)

Moreover, Representative Plaintiffs have risked their employment reputation by subjecting themselves to the responsibilities of serving as the only two named Plaintiff in this lawsuit against their former employer. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, *5 (S.D. Ohio Nov. 25, 2019) ("[a] worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Edelen v. Am. Residential Servs.*, LLC, No. Civ. A. 11-2744, 2013 WL 3816986, *16 (D. Md. July 22, 2013); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Parker*, 2010 WL 532960, *1.

Additionally, the requested Service Award Payments ($5,000.00 to Plaintiff Walker and $5,000 to Plaintiff Jones) is well within the range that Courts in this Circuit, including this Court, routinely

14

approve in similar wage and hour cases. *See, e.g.*, *Furman*, 2017 WL 1730995, *2-3 (approving $10,000 service award to representative plaintiff); *Koszyk,* 2016 WL 5109196, *3 (approving $10,000 service payments to each Representative Plaintiff). Accordingly, the Service Award Payment to Representative Plaintiffs should be approved.

IV. **CONCLUSION**

For the forgoing reasons, the Court should approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit B.

Respectfully submitted,

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (*pro hac vice*)
Anthony J. Lazzaro (*pro hac vice*)
THE LAZZARO LAW FIRM, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Phone: 216-696-5000
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com

Michael Fradin
LAW OFFICE MICHAEL L. FRADIN
8401 Crawford Ave. Suite 104
Skokie, IL 60076
Phone: 847-986-5889
mike@fradinlaw.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 26, 2024, the foregoing was filed electronically and served upon all parties via the Court's CM/ECF electronic filing system. Parties may access the filing through the Court's system.

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (0092942)

One of the Attorneys for Plaintiffs